**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**TRAN CHIROPRACTIC WELLNESS**
**CENTER, INC and ESSENTIAL**
**INTEGRATIVE MEDICINE, LLC,**

      **Plaintiffs,**

**v.**                                                                      **Case No: 8:14-cv-47-T-36EAJ**

**AETNA INC. and AETNA LIFE AND**
**CASUALTY (BERMUDA), LIMITED,**

      **Defendants.**

_____/

**<u>ORDER</u>**

This matter comes before the Court upon the Defendants' Motion to Dismiss with Prejudice Count III of Plaintiffs' Third Amended Complaint (Doc. 94), and Plaintiffs' response thereto (Doc. 96). The Court, having considered the motion and being fully advised in the premises, will deny Defendants' Motion to Dismiss with Prejudice Count III of Plaintiffs' Third Amended Complaint.

**I.       Facts Alleged by Plaintiffs[1]**

Plaintiff Tran Chiropractic Wellness Center, Inc. ("Tran Chiropractic") operates a chiropractic facility known as Essential Chirocare. Doc. 77 ¶ 7. Tran Chiropractic provides medically necessary and appropriate chiropractic and related services to patients covered under healthcare plans issued by Defendant Aetna, Inc. ("Aetna") or its affiliates ("Aetna Plans"), including plans issued by Aetna Life and Casualty (Bermuda), Limited ("Aetna Bermuda"). *Id.* Plaintiff Essential Integrative Medicine, LLC ("Integrative") is located at the same business

---

[1] The following statement of facts is derived from Plaintiffs' Third Amended Complaint (Doc. 77), the allegations of which the Court must accept as true in ruling on the instant Motion to Dismiss. *Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F. 2d 989, 994 (11th Cir. 1983).

address as Tran Chiropractic, and also provides medically necessary and appropriate medical services to patients covered under Aetna Plans, including but not limited to plans issued by Aetna Bermuda. *Id.* ¶ 8. Aetna, acting by itself and through various affiliates and subsidiaries (including Aetna Bermuda), issues and administers health insurance plans. *Id.* ¶ 9.

Prior to October 2012, Aetna regularly paid bills for services rendered by Plaintiffs to patients covered by Aetna Plans but, beginning in October 2012, Aetna "flagged" all bills submitted by Plaintiffs, and rejected nearly all requests for payment from Plaintiffs. *Id.* ¶ 10. By "flagging" Plaintiffs' accounts, Aetna now required the receipt of all records concerning any chiropractic or medical treatment or procedure before supposedly processing Plaintiffs' accounts for payment. *Id.* ¶ 11.

In each and every case, Plaintiffs have provided to Aetna all requested documents. *Id.* ¶ 12. In spite of this, Aetna has routinely denied that it received the records, and denied payment of the claims for alleged failure to provide the medical records. *Id.* When confronted with the fact that it has the records, Aetna then denies the claims for other pretextual reasons. *Id.* Aetna's statements and these denials are demonstrably false. *Id.* Indeed, Aetna has received all documentation requested and has acknowledged that it has received all such documentation. *Id.* Nonetheless, it has simply and falsely denied nearly all claims. *Id.*

Since October 2012, Aetna has denied at least 90% of all claims submitted from both Tran Chiropractic and Integrative. *Id.* ¶ 13. There is no discernible pattern as to why a few claims have been paid, while approximately 90% of the claims have been rejected for no legitimate reason. *Id.*

Aetna controls, directs and administers all of the Aetna Plans and Aetna wrongfully denied the claims submitted by Plaintiffs, which are the subject of this suit. *Id.* ¶¶ 23, 28. Plaintiffs regularly and routinely treat patients covered by Aetna Plans, including patients covered by plans

purchased and sponsored by Jabil Circuit, Inc. ("Jabil"), T. Rowe Price Investment Services, Inc. ("T. Rowe Price"), The Cultural Mission of the Royal Embassy of Saudi Arabia ("The Saudi Mission"), and Kforce, Inc. ("Kforce"). *Id.* ¶ 29.

When a patient covered by an Aetna Plan comes to the offices of the Plaintiffs, the patient lawfully assigns to Plaintiffs his or her right to receive payments for the chiropractic and medical services that they receive under the Aetna Plans. *Id.* ¶ 30. Plaintiffs have provided and continue to provide medically necessary and appropriate chiropractic and medical services to patients who were, at the time services were rendered, either employees, or employees' spouses, dependents, or children covered under the Aetna Plans (the "Aetna Plan Patients"). *Id.* ¶ 32. After rendering necessary and customary services to an Aetna Plan Patient, Plaintiffs submit all paperwork and claim forms to Aetna. *Id.* ¶ 33. All communications and responses received by Plaintiffs came from Aetna, not Aetna Bermuda. *Id*. ¶ 34. Claims submitted for payment under Aetna Bermuda plans were processed and administered by Aetna, acting on behalf of Aetna Bermuda. *Id*. ¶ 35.

After submitting claims to Aetna, Plaintiffs generally received untimely responses and requests for additional information. *Id.* ¶ 36. Plaintiffs always supply the additional information as requested. *Id.* In spite of furnishing all requested documentation, Aetna generally responds by way of an Explanation of Benefits form ("EOB"), that states the documents were not received. *Id.* ¶ 37. After notifying Aetna that the documents were, in fact, sent to and received by Aetna, Aetna then denies the claim for other false, pretextual and unsubstantiated grounds. *Id.* ¶ 38.

At some point in or after October of 2012, Aetna staff stated to Plaintiffs' staff that claims made my Plaintiffs were being flagged by Aetna for possible fraud and being handled by Aetna's Special Investigations Unit (SIU). *Id.* ¶ 57. Dr. Tran then called Aetna and left messages indicating that he wanted to speak to someone about the issue. In December of 2012, Aetna's SIU supervisor,

Sean Petree, returned Dr. Tran's call and told him that the flags were for "clinical review" to determine medical necessity, rather than due to suspicion of fraud, and that no investigation was being conducted. *Id.* ¶¶ 57-60; Doc. S-90 ¶ 7.

Despite Aetna's assurances to Dr. Tran that the Plaintiff's claims were only being reviewed for "medical necessity", Aetna in fact continued to flag claims for "fraud." Doc. 77 ¶ 62. Aetna subsequently - and falsely - proceeded to issue denials to claims submitted by the Plaintiffs for a variety of vague and inconsistent reasons, including "not medically necessary", that the services submitted were "not performed", or that the services submitted were "incidental to another service" - even when no other service was performed. *Id.* ¶ 63. Aetna knew and should have known that even as it was withholding payment based on the unfounded belief that the Plaintiffs were engaging in "fraud," it was falsely telling the Plaintiffs that the exact same claims were being denied on other, pretextual reasons. *Id.* ¶ 64. Aetna never contacted Dr. Tran or any other employee of the Plaintiffs regarding its supposed "fraud" concerns. *Id.* ¶ 65. Aetna never traveled to Tampa to inspect the Plaintiffs' operations, and never interviewed any employee, ex-employee, or agent of the Plaintiffs regarding its supposed concern of "fraud." *Id.* ¶ 66.

Plaintiffs' conduct, at all times, was exemplary, and there was and is no fraud in their billing practices. *Id.* ¶ 68. Aetna's own files show that Aetna's published reasons for denying claims, such as "no records" or "not medically necessary," were fraudulent. *Id.* ¶ 70. Aetna invented a pretext for denying claims in order to enrich Aetna (by not paying claims) at the Plaintiffs' expense. *Id.* ¶ 71.

If Aetna had been forthcoming with the Plaintiffs about Aetna's internal articulated concerns about "fraud" and "double billing," instead of withholding those concerns from the Plaintiffs, and instead of denying submitted claims based on other, pretextual grounds, the

Plaintiffs could have addressed those concerns with Aetna, cleared up any misunderstanding(s), and the Plaintiffs would not have been damaged. *Id.* ¶ 72. Plaintiffs justifiably relied in good faith on the reasons Aetna articulated in its EOB denials, which were untrue and pretextual, and inconsistent with Aetna's own internal categorization of those claims as possibly based on "fraud" and or "double billings". *Id.* ¶ 73. Aetna knew or should have known that its misrepresentations or omissions regarding its pretextual reasons for nonpayment of claims were false. *Id.* ¶ 74. Aetna knew or should have known that its misrepresentations or omissions regarding its pretextual reasons for nonpayment of claims would be relied upon by the Plaintiffs. *Id.* ¶ 75. Aetna knew or should have known that its misrepresentations or omissions regarding its pretextual reasons for nonpayment of claims, being relied on by the Plaintiffs, would damage them. *Id.* ¶ 76. Specifically, the Plaintiffs, in good faith, relied on Aetna's misrepresentations and omissions, and continued to treat Aetna patients, because they were not aware that Aetna was withholding payment based on suspicion of fraud. *Id.* ¶ 77. Had the Plaintiffs known the true reasons for Aetna's denials, they could have taken action, including but not limited to stopping treatment of Aetna patients, for whom they would not be paid. *Id.* ¶ 78.

The Plaintiffs have provided Aetna and the Florida Department of Insurance with written notification of the violations they allege against Aetna and Aetna Bermuda, and the Defendants have not resolved those violations. *Id.* ¶ 39.

The Plaintiffs, on May 15, 2014, submitted the declaration of Dr. Tan Tran (Doc. 54), which includes a comprehensive 19-page chart setting forth the following categories of information relating to these disputed claims: Member ID; date of service; positive exam findings; diagnosis; current procedural terminology ("CPT"); dates records were sent and received to/from Aetna; and Aetna's stated reason(s) for denial, and EOB date. Doc. 77 ¶ 41. Tran's declaration and

its exhibits (including that chart) were incorporated into the Second Amended Complaint by reference. *Id.*

## II.    Standard of Review

To survive a motion to dismiss, a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient.  *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Furthermore, mere naked assertions are not sufficient.  *Id.*  A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face."  *Id.* (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citation omitted).  The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint.  *Id.*

When, as here, documents are attached as exhibits to the pleading those documents are considered a part of the pleading for all purposes. *See* Fed. R. Civ. P. 10(c). If there is a conflict between the complaint and the supporting documents, the information contained in the supporting documents controls. *Day v. Taylor,* 400 F.3d 1272, 1276 (11th Cir. 2005).

## III.    Analysis

Defendants now move to dismiss Count III, alleging fraud, with prejudice. To establish a claim for common law fraud, Plaintiffs must establish that: (1) Defendant made a false statement of material fact or concealed a material fact; (2) Defendant intended for Plaintiffs to rely on these statements; (3) that Plaintiffs, in fact, relied on these statements; and (4) that Plaintiffs suffered damage as a result. *Nationwide Mut. Co. v. Ft. Myers Total Rehab Ctr., Inc.,* 657 F. Supp. 2d 1279,

1289 (M.D. Fla. 2009). When alleging fraud, Rule 9(b) requires that "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Particularity means that a plaintiff must plead facts as to time, place and substance of the defendant's alleged fraud, specifically the details of the defendant['s] allegedly fraudulent acts, when they occurred, and who engaged in them." *United States ex rel. Atkins v. Mclnteer,* 470 F.3d 1350, 1357 (11th Cir. 2006) (citations omitted).

Here, Plaintiffs allege that Dr. Tran asked Petree whether Plaintiffs' claims had been "flagged" for possible fraud, and was told that there was no fraud claim or investigation being conducted. Doc. 77 ¶¶ 57-60. Moreover, Plaintiffs allege that they, "in good faith, relied on Aetna's misrepresentations and omissions and continued to treat Aetna patients . . . ." *Id.* ¶ 77. Plaintiffs contend that if Petree had revealed the real reasons for Aetna's denials, they would have taken action including, but not limited to, stopping treatment of Aetna patients for whom they would not be paid. *Id.*

Defendants argue that the allegations in the Third Amended Complaint do not satisfy the Rule 9 requirements as they are merely the same allegations contained in the Second Amended Complaint with more "verbose" language. But that is not the case. The allegations in the Third Amended Complaint, which must be accepted as true at this time, indicate that Plaintiffs relied on affirmative statements by an Aetna representative that Aetna knew to be untrue. The Plaintiffs have alleged the speaker, the statements, the method of communication, and the approximate date of the statements. This is sufficient detail to comply with Rule 9. *See Liason v. Lorillard Tobacco Co.,* Case No. 8:13–cv–1115–T–30TGW, 2013 WL 5970726, 2 (M.D. Fla. Nov. 8, 2013) (citing *Ziemba v. Cascade Int'l, Inc.,* 256 F.3d 1194, 1202 (11th Cir.2001)).

Defendants further argue that Plaintiffs' new allegations cannot form the basis for a fraud claim because they are based on statements regarding future activity. However, Plaintiffs claim reliance on Petree's statement that Plaintiffs' claims had been flagged for reasons other than fraud and that no fraud investigation was ongoing. Those statements were about the present state of the claims – not the future. Thus, these statements can form the basis of a claim for fraudulent misrepresentation.

Defendants also argue that Count III is duplicative of Count I for breach of insurance contract and Count II for violation of Fla. Stat. § 626.954(1)(i)3. Count III is not duplicative because it relies on facts specifically alleged in that count and requires proof of different elements than the other two claims. Plaintiffs' allegations regarding Petree's representations are not incorporated into the first two counts. Furthermore, Rule 8 allows Plaintiffs to plead alternative claims for relief, even if those claims are inconsistent. Fed. R. Civ. P. 8(d). Plaintiffs are only prohibited from double recovery on the basis of alternative theories. *See F.T.C. v. Leshin,* 719 F.3d 1227 (11th Cir. 2013). The double recovery issue, and election of remedies, cannot be determined until later in the litigation. *Id.*

Finally, Defendants contend that the fraud claim is barred because it is based on the same underlying facts as the breach of contract claim. This theory is generally referred to as the "economic loss rule", which only applies to product liability cases. *See Tiara Condo. Ass'n., Inc. v. Marsh & McLennan Cos.,* 110 So. 3d 399 (Fla. 2013). Defendants rely on language from Justice Pariente's concurring opinion in *Tiara,* which states that "in order to bring a valid tort claim, a party still must demonstrate that all of the required elements for the cause of action are satisfied, including that the tort is independent of any breach of contract claim." *Id.* at 408. However, even applying that standard, the fraud claim survives because it is supported by additional facts alleged

specifically within that Count and therefore, is not based on the same facts as the breach of contract count. Accordingly, it is

ORDERED that Defendants' Motion to Dismiss with Prejudice Count III of Plaintiffs' Third Amended Complaint (Doc. 7) is **DENIED**.

**DONE AND ORDERED** in Tampa, Florida on April 30, 2015.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any

9